UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBIN ABRAHAMS, | * |
| Petitioner, | * |
| v. | *  Civil Action No. 15-cv-12935-ADB |
| KELLY RYAN, | * |
| Respondent. | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Petitioner Robin Abrahams is currently serving a sentence of 45–60 years following his convictions for the forcible rape of a child, pursuant to Mass. Gen. Laws ch. 265, § 14, and armed assaultive burglary, pursuant to Mass. Gen. Laws ch. 266, § 14. Presently pending before this Court is Abrahams' petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, in which he argues that the DNA evidence and identification evidence presented at trial were unlawfully obtained and should have been suppressed. For the reasons set forth herein, this Court DENIES Abrahams' petition for a writ of habeas corpus.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The Massachusetts Appeals Court provided the following account of the facts, which is summarized in pertinent part. See Commonwealth v. Abrahams, 6 N.E.3d 1095 (Mass. App. Ct. 2014).

In 1991, the victim, then fifteen years old, was raped in her bedroom on the second floor of a two-story apartment building in Newburyport in the early morning hours. She awoke to see the rapist, who had broken into the apartment, standing over her. She did not scream or cry

because she feared that he would hurt her, and because she worried that the rapist would also hurt her mother, who was sleeping in a bedroom nearby. After raping the victim, the rapist left through a window. The victim was immediately taken to a hospital, where a sexual assault evidence collection kit was assembled and provided to the police. The police took the sheets from the victim's bed, which contained seminal fluid in several locations, as well as other items from her bedroom. Fifteen years after the incident, Abrahams was identified as the suspect based on a DNA match. The process by which he was identified is detailed below.

In 1993, a chemist at the state police crime laboratory identified the seminal fluid in multiple areas of the victim's bed sheets. In January 2004, the laboratory sent a cutting from the bed sheets to a private company for DNA analysis. In August 2005, Abrahams was brought to the Essex County Correctional Facility from another state based on an outstanding Massachusetts warrant. He was arraigned on charges unrelated to the present case including assault with intent to rape, indecent assault and battery, and burglary. Abrahams remained in custody as a pre-trial detainee because he was unable to post bail. While he was being held on those outstanding charges, a judge in Newburyport District Court sentenced Abrahams to concurrent ten-day terms on prior convictions, which were also unconnected to the instant case. He served the sentences on those convictions in October of 2005 at the Essex County Correctional Facility, but remained in custody at the facility as a pre-trial detainee based on the other still outstanding charges.

On November 2, 2005, an employee at the Essex County Sherriff's Department obtained a sample of Abrahams' blood by pricking his finger.[1] The sample was then mailed to the

---

[1] Massachusetts statutes authorize and govern the collection of blood from convicted offenders. The statutes relevant here include Mass. Gen. Laws ch. 22E, § 3 and St. 1997, ch. 106, § 8.

Combined DNA Index System Unit ("CODIS").[2] In February of 2006, CODIS determined that the DNA profile obtained from Abrahams' blood sample matched the DNA profile obtained from the seminal fluids on the bed sheets of the victim in the present case.

Abrahams was subsequently indicted by a grand jury for the 1991 forcible rape of the victim (then a child) and armed assaultive burglary. Based on the previous DNA match from his blood sample, the Commonwealth obtained a court order to take a buccal swab sample to collect additional DNA from Abrahams' interior cheek prior to the trial. The DNA profile generated from the results of the buccal swab sample from Abrahams also matched the DNA profile obtained from the bed sheets. Abrahams then filed a motion to suppress the DNA results obtained from the initial blood test taken while he was incarcerated, and all subsequent evidence obtained as a result, on the ground that the initial collection of his blood was not authorized by the state statutes governing the collection of DNA samples of convicted offenders: Mass. Gen. Laws ch. 22E, § 3 and St. 1997, ch. 106, § 8.[3] The trial court denied the motion to suppress, and following a jury trial, Abrahams was convicted of the forcible rape of a child and armed assaultive burglary.

The Massachusetts Appeals Court affirmed Abrahams' convictions.[4] On July 30, 2014, the Massachusetts Supreme Judicial Court ("SJC") denied his application for further appellate review. On July 10, 2015, Abrahams filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1], and on December 10, 2015, filed his accompanying memorandum of

---

[2] CODIS is a national DNA indexing system that uses forensic science to connect violent crimes, which enables federal, state, and local forensic laboratories to exchange and compare DNA profiles, thereby linking serial violent crimes to each other and to known offenders.
[3] St. 1997, ch. 106, § 8 was replaced by the enactment of St. 2003, ch. 107, § 2, but the relevant language is unchanged. In its opinion concerning Abrahams' appeal, the Massachusetts Appeals Court consistently refers to the 2003 statute.
[4] Abrahams contends that the Appeals Court also reduced his minimum sentence by ten years [ECF No. 1], but upon review of the record, the Court was not able to confirm this assertion.

law in support [ECF No. 19]. On April 5, 2016, Respondent Kelly Ryan filed a memorandum of law in opposition to the petition [ECF No. 22], and on May 19, 2016, Abrahams filed a response [ECF No. 23].

## II. LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision is considered an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 407. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotations omitted). Lastly, a state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

4

To obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits . . . ." Id. at 99. "[T]he state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (internal quotations omitted). Thus, the petitioner's burden in this regard is "heavy," and, if it is not met, "a federal habeas court must credit the state court's findings of fact—and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." Id.

## III. DISCUSSION

In his petition, Abrahams presents two grounds for federal habeas relief: (1) that the taking of his DNA sample was unlawful; and (2) that the identification of Abrahams as the rapist was unnecessarily suggestive and in violation of his constitutional rights. Ryan argues that neither of these grounds warrant relief pursuant to the AEDPA because ground one presents an issue of state law which is not susceptible to federal habeas relief, and the identification procedure challenged in ground two was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Because Abrahams is proceeding *pro se*, the Court will construe his claims liberally. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### A. Ground One: DNA Sample

Abrahams first contends that taking a DNA sample from him while he was in custody at the correctional facility was unlawful. On appeal in state court, he claimed that this was unlawful

because the sample was obtained in violation of a state statute governing the collection of DNA from incarcerated persons. The Appeals Court determined that it was not obtained in violation of the state statute. It also noted that Abrahams did not claim any state or federal constitutional violations in his state court appeal. See Abrahams, 6 N.E. 3d at 1095, 1098 (issue on appeal was "the proper construction of a statute governing . . . [DNA] samples" and "defendant does not claim any constitutional violation").

When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," and it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). The interpretation of a state statute is a state-law question. See e.g., Wisconsin v. Mitchell, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."); Marshall v. Bristol Super. Ct., 753 F.3d 10, 18 (1st Cir. 2014) (a federal habeas court is bound by the state court's construction of its own law); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Here, the Massachusetts Appeals Court determined that the statute governing the collection of DNA from incarcerated persons applied to Abrahams because, although he had completed his previous sentence, he remained in custody as a pre-trial detainee on other charges. Abrahams, 6 N.E.3d at 1097–98. Thus, as Abrahams was still in custody, the statute applied to him because it specified that persons incarcerated for certain offenses must submit a DNA sample prior to their release from custody. Id. The court concluded that because the DNA was properly collected from Abrahams,

suppression was not required. Id. Accordingly, this Court cannot adjudicate petitioner's claim to the extent that he raises an issue pertaining to the construction of Massachusetts state statutes.

Even construing Abrahams' petition liberally, to the extent that he now seeks to assert that the DNA collection constituted an unreasonable search and seizure, the argument fails because he has not exhausted his federal constitutional claim in state court. Habeas relief "shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "This exhaustion requirement . . . is born of the principle 'that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)). "[F]ederal courts have enforced the exhaustion requirement consistently and rigorously" with very few exceptions, and "a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases" of his federal claims. Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (internal citations omitted).

To meet his burden, the habeas petitioner must demonstrate that he presented each and every claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994). The First Circuit has "identified at least five ways in which a habeas petitioner may satisfy the 'fair presentment' requirement," including "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Coningford, 640 F.3d at 482 (citing Scarpa, 38 F.3d at 6). In making this

7

determination, "the decisive pleading is the application for further appellate review [ALOFAR]." Adelson, 131 F.3d at 263. "The petitioner . . . may not raise an issue before the Appeals Court, abandon it in his ALOFAR, and then raise it again in his habeas petition; rather, in order to survive the exhaustion requirement, an issue must be raised 'within the four corners of the ALOFAR.'" Gonsalves v. Thompson, 396 F. Supp. 2d 36, 40 (D. Mass. 2005) (quoting Mele, 850 F.2d at 823). Accordingly, "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988). "The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Id.

Here, Abrahams has not exhausted his state court remedies regarding the argument that the taking of his DNA constituted an unconstitutional search and seizure. In his application to the SJC for further appellate review,[5] he did not substantively and conspicuously present a federal constitutional claim, point to a particular right specifically guaranteed by the Constitution, cite to a specific constitutional provision, or cite to federal constitutional precedent. Rather, Abrahams relied purely on Massachusetts case law and state statutes. "[A]bsent clear and traditional articulation of a claim in language known to preserve a potential federal claim, state-law formulations should most often be construed as raising purely state-law issues." Nadworny v. Fair, 872 F.2d 1093, 1099 (1st Cir. 1989). Further, the First Circuit has cautioned that "the only safe course for a petitioner is explicitly to identify his federal constitutional claims before the state court. This course will not only give the state courts a fair opportunity to correct any

---

[5] "For purposes of the exhaustion requirement, it does not matter whether the SJC actually rules on the issue, so long as the issue was presented in the ALOFAR." Gonsalves v. Thompson, 396 F. Supp. 2d 36, 40 n.2 (D. Mass. 2005).

8

constitutional error but will obviate the need for . . . minute retrospective dissection of state court proceedings." Dougan v. Ponte, 727 F.2d 199, 202 (1st Cir. 1984). Abrahams claims that he has adequately raised a federal issue because he "presented a federal claim and relied upon federal holdings in his application." [ECF No. 23]. Upon review of his application for further appellate review, however, the Court does not agree that Abrahams adequately raised any federal claims. Abrahams did not cite to any federal cases, and does not claim that any state-law claims he relied on were functionally identical to a federal constitutional claim. At most, Abrahams refers to a "substantial violation of individual rights" and an "unlawful search" in passing, which does not suffice as an adequate presentation of the issue in state court. See e.g., Adelson, 131 F.3d at 263 ("[T]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim."); Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) ("oblique" invocation of phrase "due process" not enough for fair presentment); Dyer v. Ponte, 749 F.2d 84, 86–87 (1st Cir. 1984) ("cursory references" to due process and fourteenth amendment raise doubts about adequacy of presentment); Dougan, 727 F.2d at 199–201 (broad and opaque labels, such as denial of a "fair trial" not enough). Thus, Abrahams failed to fairly present in state court his constitutional claim that the taking of a sample of his DNA constituted an unreasonable search and seizure in violation of the Fourth Amendment. Accordingly, this claim is unexhausted.

Notwithstanding Abrahams' failure to exhaust the remedies available in the courts of the state, a district court may deny his petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b)(2); see also Gonsalves, 396 F. Supp. 2d at 43. Here, Abrahams' claim is barred because habeas relief cannot be granted on the ground that evidence obtained in violation of the Fourth Amendment was introduced at trial. Stone v. Powell, 428 U.S. 465, 494 (1976); see also

9

Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001) ("[A] federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims."). The court in Stone reasoned that the purpose of the exclusionary rule, to deter improper police conduct, is not served by additional review of the evidence in collateral habeas proceedings years later. 428 U.S. at 492–93. "Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs" of the exclusionary rule. Id. at 493–94. Accordingly, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494; see also Connolly v. Roden, No. 09-11987-RWZ, 2013 WL 139702, at *2 (D. Mass. Jan. 11, 2013), aff'd, 752 F.3d 505 (1st Cir. 2014).[6] Therefore, Abrahams' first ground for relief is unavailing.

### B. Ground Two: Identification Procedure

Abrahams next contends that the trial court's failure to suppress the victim's identification of Abrahams in a photo array violates his Fifth, Sixth, and Fourteenth Amendment rights. Abrahams argues that the state court's decision not to suppress the identification was

---

[6] An exception to this rule exists where the state has not "provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone, 428 U.S. at 494. "The petitioner bears the burden of proving that his case fits within the contours of the exception." Sanna, 265 F.3d at 8. Here, Abrahams has not attempted to show that he did not have the opportunity to fully and fairly litigate a Fourth Amendment claim. Id. ("A 'full and fair opportunity' to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations."). Given that Abrahams was accorded the opportunity to present the argument, when represented by counsel, in a motion to suppress and in a suppression hearing, see Supplemental Answer at 19, 128, the Court does not find reason to believe that he has not otherwise had a full and fair opportunity to litigate his claim.

contrary to the Supreme Court's holding in Perry v. New Hampshire, 565 U.S. 228 (2012), the standard for suppression under the due process clause.[7]

Due process concerns arise when law enforcement officers use an identification procedure that is both "suggestive and unnecessary." Perry, 565 U.S. at 228. Pre-trial identification can violate due process when it is the product of improper police conduct that renders it "so impermissibly suggestive" as to give rise to a "substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 105 n.8 (1977). Even if the police used a suggestive procedure, however, suppression of the identification evidence is not inevitable. Id. at 112–13. "Rather, 'if the indicia of reliability are strong enough to outweigh the corrupting effect of the . . . suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.'" Moore v. Dickhaut, 842 F.3d 97, 101 (1st Cir. 2016) (citing Perry, 565 U.S. at 231). "The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." Perry, 565 U.S. at 228. "Absent unnecessarily suggestive procedures, reliability is ensured through traditional trial protections, such as 'the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.'" Moore, 842 F.3d at 101 (quoting Perry, 565 U.S. at 233).

In this case, Abrahams argues that the identification evidence was impermissibly suggestive because the police officers told the victim that the suspect's DNA matched the

---

[7] Because Abrahams has not clarified his arguments any further, the Court will construe his Fifth Amendment claim as being the same as his Fourteenth Amendment claim regarding due process rights, and will interpret them as one and the same. See Kirby v. Illinois, 406 U.S. 682, 690 (1972) ("Due process clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification.").

evidence found at the scene, because she was susceptible to improper suggestion by having her mother in the room, and because the identification took place years after the crime. Although the victim's mother knew Abrahams when he was a child, the victim did not know him. S.A. at 100, 155. During the identification procedure, the victim was taken into a room where her mother was not present, and was shown an array of fifteen photographs. Id. After viewing the photographs, she identified Abrahams as the assailant. Id. In accordance with Supreme Court precedent, the First Circuit has explained that "it is only in extraordinary cases that identification evidence should be withheld from the jury." United States v. Maguire, 918 F.2d 254, 264 (1st Cir. 1990) (citing United States v. Turner, 892 F.2d 11, 14 (1st Cir. 1989)); see also Manson, 432 U.S. at 116 ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."). Moreover, the First Circuit has condoned as permissible the suggestion that the suspect is one of those shown in the array. See Maguire, 918 F.2d at 264 (citing Turner, 892 F.2d at 14).

Here, the trial judge found that there was "nothing suggestive about the procedure" conducted by the police, noting that the victim was told that the police had a suspect, and that the suspect was confirmed by DNA evidence. The trial judge denied the motion to suppress the identification evidence, and the Appeals Court affirmed. See Abrahams, 6 N.E.3d at 1098. Even assuming that there was any evidence of improper police conduct, which the Court finds lacking, the only factor of concern in assessing the reliability of the identification in this case is that it took place years after the crimes. See Neil v. Biggers, 409 U.S. 188 (1972) (noting that the lapse of seven months between the rape and the confrontation would be a serious factor in determining the reliability of the identification). After affirming the trial court's decision regarding the identification evidence, the Appeals Court nevertheless went on to determine that even assuming

12

there was "any error with respect to the photographic identification . . . [it] was harmless beyond a reasonable doubt." Abrahams, 6 N.E.3d at 1098 ("Before a 'federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt'" (quoting Chapman v. California, 386 U.S. 18, 24 (1967))). Thus, Abrahams cannot obtain federal habeas relief unless the harmlessness determination by the Appeals Court was "objectively unreasonable" under § 2254(d). Mitchell v. Esparza, 540 U.S. 12, 18 (2003).

In this case, the Massachusetts Appeals Court decision with respect to the identification evidence was not objectively unreasonable. On habeas review, Abrahams bears the burden of showing that any error had a "substantial and injurious effect or influence" on determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). "[T]he Brecht standard of review . . . is even more deferential than the ordinary standard of review under the [AEDPA]." Connolly v. Roden, 752 F.3d 505, 506–07 (1st Cir. 2014). Abrahams has failed to show that, even assuming any error, it had a "substantial and injurious effect or influence" on the jury's verdict as required to set aside his conviction. Further, the Appeals Court determined that the evidence on the question of identity was overwhelming, based on two samples of DNA identifying Abrahams as the assailant that night, as well as an in-court identification. See Commonwealth v. Dixon, 938 N.E.2d 878, 881 n.7 (Mass. 2010) ("DNA evidence is both unusually and irrefutably probative of identity."). Abrahams has not demonstrated that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Harrington, 562 U.S. at 103. Accordingly, the state-court decision was neither contrary to nor an unreasonable application of clearly established federal law.

Next, Abrahams claims a violation of the Sixth Amendment. Specifically, Abrahams argues that the trial court's failure to suppress the identification was in violation of the interpretation of the confrontation clause set forth in Crawford v. Washington, 541 U.S. 36 (2004), because the "victim claimed to not know the assailant, and gave the police a sketch, then changed it, however, the alleged victim knows the accused, and her dilatory tactics suggest she has something to hide." [ECF No. 19].

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford, the Supreme Court held that out-of-court statements that are "testimonial" by witnesses who did not appear at trial are barred under the Confrontation Clause, unless witnesses are unavailable and defendants had a prior opportunity to cross-examine witnesses. 541 U.S. 36 (2004). Crawford, however, does not apply here. To the extent that Abrahams is claiming a violation of the confrontation clause regarding the victim's statements, the argument necessarily fails because the victim testified at trial under oath, the jury observed her demeanor, and she was subject to extensive cross-examination regarding her testimony. See Maryland v. Craig, 497 U.S. 836, 846 (1990) (the Sixth Amendment's confrontation right is satisfied by "[t]he combined effects of these elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact . . . [which serve] the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of [] criminal proceedings."). Because Abrahams had a "face-to-face meeting with witnesses against [hi]m at trial," id. at 844, he cannot prevail on his Sixth Amendment claim.

Lastly, Abrahams appears to raise a sufficiency of the evidence claim in his accompanying memorandum of law, citing Jackson v. Virginia, 443 U.S. 307 (1979). He did not raise this claim in his application for further appellate review or in his petition for habeas relief, however, and as such, it is unexhausted, and also can be deemed waived. See Smiley v. Maloney, No.01-11648-GAO, 2003 WL 23327540, at *16 n.39 (D. Mass. Oct. 31, 2003), aff'd, 422 F.3d 17 (1st Cir. 2005) ("It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claim for habeas relief."). Further, Abrahams' Jackson claim also fails on the merits. See 28 U.S.C. § 2254(b)(2). In Jackson v. Virginia, the Supreme Court held that a state prisoner is entitled to habeas corpus relief if a federal judge finds that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." McDaniel v. Brown, 558 U.S. 120, 121 (2010). Here, it is clear that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt given the overwhelming evidence supporting the convictions, consisting both of DNA and other evidence including consciousness of guilt. Thus, Abrahams' Jackson claim is also unavailing.

## IV. CONCLUSION

For the reasons discussed above, Abrahams' petition for a writ of habeas corpus [ECF No. 1] is hereby DENIED. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254 Cases, R. 11(a). Because Abrahams has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability here.

**SO ORDERED.**

May 26, 2017                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE